### MARLIN FIREARMS CO. v. DINNAN.

#### (Circuit Court, D. Connecticut. July 7, 1905.)

#### No. 1,137.

PATENTS—INFRINGEMENT—MAGAZINE GUNS.

> The Hepburn patent, No. 584,177, for a magazine gun, was not anticipated, and discloses invention. Also *held* infringed.

In Equity. On final hearing.

Robert C. Mitchell, for complainant.

Louis C. Raegener and Milton E. Robinson, for defendant.

PLATT, District Judge. This is a suit in equity, brought on the Hepburn patent, No. 584,177, dated June 8, 1897, for certain improvements in firearms, which relate to a "magazine gun." The defenses are that the claims, construed narrowly, as they must be, in view of the prior art, are not infringed, and that, if broadly construed, they are void for want of novelty and invention.

Claim 4 has been given the right of way by experts and counsel, and the court is content to follow the selected path. It is:

> "(4) In a firearm, a barrel carrying a rearwardly-extending side plate, a stock portion carrying a forwardly-extending side plate, attaching-tenons carried by said plates, a recess in the stock portion to receive the tenon of the barrel portion, and a recess in the barrel portion to receive the tenon of the stock portion, and means for detachably holding said parts in an engaged position."

This claim must be read in the light of the specifications and of the prior art before it can be construed with a fair degree of intelligence. In no other way can an open mind grasp the scope of the inventive thought, and perceive whether that thought has been

clearly expressed, and to what lengths others may be allowed to travel before they can rightfully be charged with invading the preempted territory.

Defendant insists that it covers nothing more than the use of a joint or splice between the barrel and stock portions, so that the gun may be conveniently separated. That this has been done in the Mason, Bennett, and Browning patents, and that the use of a like splice-joint by Hepburn was merely a matter of substitution, and showed no invention at all; and further that Pritchard, in a rail patent, shows just such a splice-joint, and that it is a matter of common knowledge in carpentry, as well as in rails, that when one portion carries a rearwardly-extending side plate, and the other a forwardly-extending side plate, each with tenon so constructed as to fit into recesses in the other, you have a splice-joint, pure and simple, and that the words of the claim mean no more; that in the case of a fork one would speak of the "tine portion and handle portion," and so with a wheelbarrow. This line of reasoning seems to me to be finespun and extremely technical. It eliminates and misses the spirit and essence of Hepburn's invention. Nor can the court agree that complainant shifted its position between the times of taking direct and rebuttal testimony. The complainant has, it is believed, maintained the one position consistently and continuously, from beginning to end, elaborating it possibly somewhat on the rebuttal. This view of the matter leads us away from the thought expressed in White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303, and other cases.

It may be that complainant is confined to a take-down splice of the peculiar kind described, but it is equally clear that Hepburn was the first one to think out the peculiar form which we find in both complainant's and defendant's structures. When the splice is made on the side instead of the top, it becomes an important invention. That was the real advance in the art. Each side plate is independent—one plate carried by the stock, and the other by the barrel—and the great ingenuity resides in separating the side plates, and in the attachment of the internal mechanism partly to one plate and partly to the other, in such a way that the entire organization works harmoniously, and is also easily reached for purposes of cleansing and repair.

The Bennett patent, No. 487,406, is admitted to be the nearest approach to the Hepburn invention which the art produces. Here the side plates are both rigidly attached to the barrel. The mechanism is in a cavity between the rigid side walls. To prepare for its introduction is strictly inside work, and a solid block of metal must be milled out therefor in advance. The connection is provided for by making the tang, G, carried by the stock portion, and sliding into the space between the rigid side plates, and must of necessity be less efficient than the connection provided by Hepburn's construction. And again, after taking down the Bennett gun, the cartridge-handling machanism is not by that act rendered accessible in any such sense as it certainly is in the Hepburn construction. The manifest differences are those which are inherent in the methods of taking the guns down.

Every fresh examination of this matter brings the court the more clearly to the conclusion that Hepburn invented a new and distinct type of take-down magazine gun, and, from the view point thus reached, the defendant has, it would seem, without any serious straining of the doctrine of equivalents, come about as near as its peculiar style of cartridge-handling mechanism will permit to offering the public a gun containing a copy of that invention. The differences which defendant's counsel so ingeniously point out finally resolve themselves into immaterial differences which are inherent in the variant action of the operative mechanism of the two guns, and, beyond all that, they appear to be studied evasions, which may perhaps be somewhat hidden from the ordinary observer by using those inherent differences as a cloak to cover them. Indeed, it is so plain that he who runs may read it that the defendant's method of taking its gun down would never have existed if Hepburn had not blazed out the trail so that it could be followed.

Claim 4 being valid and infringed, it is unnecessary to waste space or time upon claims 1, 2, and 3. Claim 1 only differs in specifying "an undercut recess or mortise in the reinforce of the barrel portion." This is so that the end of the side plate engaging therewith cannot be pried off. Defendant copies this feature identically and for the same purpose. Claim 2 requires an "abutment" on the stock portion to engage in a recess at the rear end of the side plate of the barrel portion. The projecting head of the screw upon which the hammer is mounted is such an abutment. See Exhibit Allen Drawing, Fig. 2. It projects into a recess, $D^2$, and prevents vertical dislodgment of the rear end of the side plate. In Fig. 1 of the same exhibit we find another abutment, D, which fits into the recess, $D^1$, and helps to hold the parts together when assembled. Defendant appears to have made assurance doubly sure in the matter of abutments. Claim 3 merely differs from the others in specifying the means for holding the parts together. That means shall be "a bolt passing through one of the side plates and engaging the other side plate," with "a suitable head or shoulder * * * outside of the first-mentioned plates." Defendant has copied this with engaging accuracy.

Claims 7 and 8 remain:

"(7) In a firearm, a barrel portion carrying a rearwardly-extending side plate, and an overlapping top piece, a projection carried by said side plate underneath said top piece, and spaced apart therefrom, a reciprocating breech-bolt in the space between said top plate and said projection, and means for detachably holding said breech-bolt in its operative position.

"(8) In a magazine-firearm, a barrel portion carrying a rearwardly-extending side plate, a top piece carried thereby, a projection carried by said side plate underneath said top piece, a breech-bolt sliding in the space between said top plate and said projection, a stock portion carrying a forwardly-extending side plate, and means for detachably securing said parts in the operative position."

The essential features of these claims are that they provide "means" for holding the breechblock against "accidental detachment" when the gun is taken down. When defendant's gun is

taken down, we find that the "breechblock is prevented from be-coming accidentally detached from its support," which demonstrates that "means" to accomplish that object must be present. Not stopping to dissect such "means" into its constituent elements, I am in accord with complainant's expert when he says that, "Nothing except an out and out duplicate construction could be more clearly an embodiment of the terms of said claim 7." As to claim 8, the means employed by defendant to hold the breechblock in place have been alluded to, and the means for securing the parts in operative position, which is done by the thumb screw, is identically the same as that used in the patent in suit.

Defendant vainly endeavors to set up Hepburn's prior patent, No. 434,062, in anticipation of claims 7 and 8, because the claims in suit relate solely to the take-down type of gun. It is only when the gun is actually taken down that any value resides in the means employed to hold the breechblock in place. The claims at issue are valid and infringed.

Let an injunction issue, and a master be appointed to take an accounting.